MERCHANTS FIRE ASSURANCE CORPORATION OF NEW YORK

*vs.* THE HAMILTON COMPANY.

NOVEMBER 18, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a suit in equity in which the complainant is seeking to compel the respondent to account for and pay over, up to a specified amount, certain money allegedly received by it from a third person, on the theory that in such transaction the respondent was in effect acting as trustee for the complainant, and also for other and further relief as the exigencies of the case may require. The respondent's substantial demurrer to the bill of complaint was sustained by the superior court and from the entry of a decree dismissing the bill the complainant duly prosecuted its appeal to this court.

It is alleged in substance in the bill of complaint that on September 5, 1937 the complainant delivered to the respondent a policy insuring against fire in the sum of $150,000 a four-story brick building belonging to the latter and situated in Cranston in this state; that such policy contained a provision that if complainant shall claim that the fire was caused by the act or neglect of any person or corporation the complainant shall, on payment of the loss, be subrogated to all right of recovery by the insured for the loss resulting therefrom and such right shall be assigned to the complainant by the assured on receiving such payment; that on June 18, 1939 the above-described building was seriously damaged by fire; that on June 23 the respondent presented to the complainant a proof of loss signed and sworn to in the amount of $143,052; that on the date last mentioned the parties agreed that the total damage to the insured premises amounted to the above sum, and on that

day the complainant paid and the respondent accepted $143,052 in full payment for such damage.

It is further alleged in the bill that thereafter complainant discovered that the fire in question was caused by the negligence of one Alexander Keema, which fact was not known to the complainant at the time it paid to the respondent the aforesaid sum to cover its fire loss; that because of the negligence of said Keema the respondent, at the time complainant made its payment, had a right of action against Keema to recover from him the full amount of loss or damage to the insured premises caused by the fire; that the complainant, by reason of its payment to the respondent, became entitled in equity and good conscience and subrogated to all rights and remedies which the respondent had against said Keema to the extent of complainant's payment; and that such payment and the respondent's acceptance thereof in full satisfaction of its loss constituted in equity an assignment of the right of action of the respondent against Keema.

The bill also alleges that on June 17, 1943 the respondent instituted an action at law against Keema to recover damages, alleging in its declaration that he negligently caused a fire in respondent's premises whereby they were totally destroyed; that on September 21, 1945 the respondent compromised the aforesaid action at law with Keema for a sum of money, as the complainant is informed and believes, and Keema was released from liability and such action was marked settled in the records of the superior court; that such conduct constituted a violation of complainant's rights in view of its claim of subrogation and its equitable assignment, and the respondent received and held any moneys paid by Keema as trustee to pay the same to the complainant to the extent of $143,052; that the respondent has refused to disclose to the complainant what sum of money was paid by Keema; that the latter is without means of discovering what such sum was; and that, although the complainant has made demand on the

respondent for such disclosure, accounting and payment, the respondent has refused to account for and pay to the complainant so much of such sum of money as does not exceed $143,052.

The respondent's demurrer to the above bill contained a number of grounds, of which the following were sustained by the justice of the superior court and the remainder overruled: "(1) It does not appear in and by said bill that the complainant has any title, cause or right of action against the respondent in support of which discovery is sought. * * * (5) Said bill is without equity. (6) The complainant has not alleged in said bill facts entitling it to be subrogated to any right of the respondent against the person designated in said bill as 'one Alexander Keema'. (7) It does not appear in and by said bill that the respondent did, at or before the payment to the respondent under its policy, claim that the fire which caused the loss was caused by the act or neglect of any person or corporation."

The controlling question raised by the demurrer is whether the complainant can maintain its bill to obtain the relief prayed for, based on its claim of subrogation and equitable assignment, without first having made claim at or before payment of the loss that the fire was caused by the act or neglect of a third person. The bill contains no allegation that such a claim was made.

The complainant argues generally in support of its position that the ruling of the superior court in sustaining the demurrer was erroneous because an insurer's right of subrogation, after it pays the loss, is not dependent upon provisions of the policy but exists independently thereof and rests upon principles of equity. The complainant also urges that the provision in the policy should not be construed as requiring it to make the claim above referred to at or before the time it pays the fire loss.

On the other hand the respondent, while it does not seriously question the complainant's general claim regarding its right of subrogation, does contend that such a right is

personal to the parties, may be enlarged, limited, or defeated by a contract if entered into by them, and is controlled by such contract. The respondent further contends that in the instant cause the provision of the insurance contract as alleged in the bill of complaint should be construed as requiring the complainant to assert its claim of subrogation at or before the time it pays the fire loss.

The provision set out in the bill of complaint as being in the policy in force between the parties herein obviously was in the standard form of fire insurance policy in force in this state at the time the policy in question was issued, the fire occurred and the loss was paid by the complainant, because such provision then appeared in our statutes providing for the standard form of a policy of that nature. General laws 1923, chapter 258, sec. 5; G. L. 1938, chap. 154, §2. The provision as it appeared in such sections reads as follows: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

It may be observed, however, that the above provision is no longer required to be in the standard fire insurance policy here but that such provision was replaced by one appearing in public laws 1945, chap. 1623, which contains the following language: "This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company."

This court has apparently recognized the general principle upon which the complainant chiefly relies which is in substance that an insurer's right of subrogation, a contract of fire insurance being one of indemnity, is not necessarily dependent upon the provisions of the policy alone but exists as a recognized equitable right in the appropriate

circumstances. In *Ferraiole* v. *Lamson Oil Co.*, 49 R. I. 426, which was an action at law by an insured to recover damages from the defendant on the ground that its negligence caused a fire which injured his property, the precise question before the court was whether an insurer who had paid part of the loss was a necessary party. No question of the construction of the provisions of the policy was involved, but in deciding that the insurer was not a necessary or a proper party the court used the following language at page 428 of the opinion: "Any subrogation of the insurance company to a portion of plaintiff's rights against defendant would not be acquired pursuant to the terms of the policy but by reason of an equity arising from payment of the loss."

The recognition of the above broad principle of law does not, however, determine the instant cause. The respondent contends that such a right of subrogation as the complainant is here claiming, being personal in nature, may be modified, curtailed or defeated by a provision in the insurance contract entered into by the insured and the insurer. The respondent argues that the pertinent provision in the policy of insurance as set out in the bill of complaint, when properly construed, shows that the parties limited the complainant's right of subrogation by requiring as a condition to the maintaining of such a right that the complainant must, at or before the time of payment of the loss, assert its claim that the fire bringing about such loss was caused by the act or neglect of some third person.

An examination of the cases called to our attention on the above point, in the judgment of a majority of the court, tends to show that the weight of such authority as there is supports the respondent's position that the provision in the insurance contract we have under consideration should be construed as requiring that the insurer make such a claim as above indicated and make it at or before the time it pays the loss if it desires later to enforce its right of subrogation.

In *Fire Association of Philadelphia* v. *Schellenger*, 84 N. J. Eq. 464, where the facts closely resembled those in the

present cause and where the complainant was denied relief, a provision in a fire policy in exactly the same language as the provision now before us was construed as follows: "The rights of the parties to this litigation, therefore, must depend upon the meaning of the provision of the policy which deals with the matter of subrogation. It is plain from a reading of this part of the contract that the parties to it intended that the right of the insurer, in case it paid the loss, should not be an absolute, but a conditional one; the condition being that the insurer should 'claim that the fire was caused by the act or neglect' of some third person. We think it equally clear that the agreement contemplates that such claim should be made by the insurer to the insured at or before the time when it paid the loss. This appears from the fact that by its terms the right to subrogation, if it comes into existence at all, becomes complete when the payment is made. The language used is, 'this company shall *on payment of the loss* be subrogated,' &c.; 'and such right shall be assigned to this company by the insured on *receiving such payment.*' "

The same construction and result were also reached in the following cases after consideration of the meaning of clauses identical with the one appearing in the instant bill and under facts generally simiar to those herein. *Firemen's Ins. Co.* v. *Georgia Power Co.,* 181 Ga. 621; *Home Ins. Co.* v. *Hartshorn,* 128 Miss. 282. See also *Firemen's Fund Ins. Co.* v. *Thomas,* 49 Ga. App. 731.

The complainant has cited no cases which are directly *contra* to those above referred to. It has, however, brought to our attention two which it argues lend support to its views on the question before us. *Williams & Miller Gin Co.* v. *Baker Cotton Oil Co.,* 108 Okla. 127; *Cary* v. *Phoenix Ins. Co.,* 83 Conn. 690. The first of these cases was an action at law by the insured to recover damages from the defendant on the ground that it had caused the fire which destroyed the plaintiff's property which was insured. The policy contained the same provision in respect to subrogation as

is set out in the present bill.  The court in substance states, apparently as *dicta,* that it is reluctant to believe that it was the legislative intent to limit the insurer's right of subrogation by incorporating in the policy the clause in question, and to that extent the opinion is possibly of some assistance to the complainant.  However, it contains this language at page 129:  "We do not feel that the facts in this case require that we either concur or refuse to acquiesce in the reasoning of the New Jersey court."

The *Cary* case, an interpleader proceeding, concerned the adjustment of a fire loss.  Several insurance companies were involved and their policies each contained a provision similar to the one we are asked to construe.  The court in that case, however, did not pass expressly on the meaning of those provisions and there is no suggestion that such issue was raised.  The case apparently was decided on a question of procedure as the following sentences at page 697 of the opinion indicate:  "The writ of error before us is quite inadequate to present the questions sought to be raised by the assignment of errors.  They are of a character to be reveiwed upon an appeal containing a finding of facts."  The case, therefore, does not seem to be helpful.

Upon consideration it is the opinion of a majority of the court that the provision of the policy before us should be construed in accordance with the holdings in the cases relied on by the respondent, namely, to the effect that it is the intent and meaning of such provision that the right of the insurer to subrogation is not absolute but is on the condition that it make claim, at or before the time it pays the loss, that the fire was caused by the act or neglect of some third person.  When issued the policy becomes the contract of the parties.  It is reasonable to assume that the provision was inserted in the policy for some purpose.  From its terms it does not appear to be a mere confirmatory restatement of the equitable principles governing subrogation generally, nor does it act to enlarge or increase them.  On the contrary, when read as a whole its apparent object is to limit

and place a condition upon the exercise of such right of subrogation.

There being no allegation in the bill that the complainant made any such above-described claim at or before it.paid the loss or that its failure to do so was due to any improper conduct, fraud or concealment on the part of the respondent a majority of the court is of the opinion that the superior court ruled correctly in sustaining the respondent's demurrer to the bill.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Boss & Conlan, John T. Keenan,* for complainant.

*Hinckley, Allen, Tillinghast & Wheeler, Matthew W. Goring,* for respondent.