[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case, which was tried to the court, involves a claim of personal injuries allegedly suffered by the plaintiff, Genaro Grimaldi, as a result of an motor vehicle accident with the defendant, Bayard Jerome. The operative complaint, which is dated July 6, 1995, is in two counts. In the first count, the plaintiff alleges that on August 19, 1991, while driving his motor vehicle in a westerly direction on Washington Street in Norwalk, a taxi operated by the defendant Jerome, and owned by his employer, the defendant Norwalk Yellow Cab, Inc., which was proceeding south on Martin Luther King Boulevard, went through a red light at the intersection of these two streets, and collided with the motor vehicle driven by the plaintiff. It is further alleged that this accident was caused by the negligence of the defendants, under both common law and statute, including the violation of General Statutes § 14-299(b)(3), requiring stopping for a red light. CT Page 14418 The plaintiff further alleges that as a result of this accident, he suffered personal injuries to his back, neck and leg, and that these injuries were permanent and disabling, and adversely affected his usual activities.
In the second count of his complaint, the plaintiff claims that defendant Jerome was operating his vehicle at an excessive speed and went through a red overhead traffic light without slowing down, which allegedly constituted "recklessness," thus entitling the plaintiff to "punitive damages under the common law" and to "damages under Connecticut General Statutes § 14-295."
The defendants denied the material allegations of the complaint and filed two special defenses, the first to the effect that any injuries sustained by the plaintiff were caused by his own negligence, including failing to obey a traffic control signal and driving too fast. In the second special defense, the defendants claim that the plaintiff was speeding and entered the intersection when it was unsafe to do so, and that his conduct constituted recklessness.
The city of Norwalk intervened as a plaintiff pursuant to General Statutes § 31- 293(a), and alleged that it was the employer of the plaintiff at the time of the accident, and that the plaintiff was in the course of his employment when he was injured. The intervenor seeks to recover for any money it paid to the plaintiff for medical bills and lost wages.
After listening to the evidence, it is found that the plaintiff has proved the allegations of his complaint that negligence on the part of the defendant driver, Jerome, was the cause of the accident in question. The plaintiff introduced, in addition to his own testimony, a certified copy of a "guilty" plea entered by the defendant in February, 1992, to a charge of violating General Statutes § 14-299(b)(3), prohibiting the violation of traffic control signals. Such a plea by the defendant constitutes an admission of negligence and is admissible for that purpose. Flynn v. Raccuia, 146 Conn. 210,213, 148 A.2d 763 (1959).
The plaintiff also introduced the testimony of Amy Stutts Lamb, who was a passenger in the taxicab operated by Jerome, and was on her way to the railroad station. She testified that the defendant was a bit late in picking her up to catch a train leaving Norwalk around 9:45 in the morning, that he did not slow CT Page 14419 down as he entered the intersection and that the defendant drove right through a red light at the intersection of Washington Street and Martin Luther King Boulevard. This witness further testified that the weather at the time of the accident was terrible as "Hurricane Bob" was in process, and it was raining heavily with very limited visibility.
The court concludes that the accident between the plaintiff's motor vehicle and the taxicab operated by Jerome resulted from and was caused by the negligence of said defendant in going through a red light and colliding with the plaintiff's vehicle, which was lawfully in the intersection. Moreover, no contributory negligence on the part of the plaintiff has been discerned as he stopped for a red light and proceeded to enter the intersection when it turned green.
It is further found that as a proximate and direct result of the aforesaid collision, the plaintiff was caused to sustain personal injuries for which he was transported from the scene by ambulance to the Norwalk Hospital, where he was treated in the emergency room and released to contact his own doctor. The extent of the injuries is not so clear, however, because of the medical history of the plaintiff who, at the time of the accident, was 58 years old. The plaintiff had a number of accidents prior to the August 19, 1991 collision that is the subject of this suit, viz., in 1984, 1985, 1987, 1988, 1990, that primarily affected his back with some involvement of the neck. He then suffered severe injuries to his back and neck when he fell off a tractor in June, 1992.
The deposition testimony of Frank A. Serena, M. D., an orthopedic surgeon in Norwalk, was introduced, as well as a number of reports by Dr. Serena of the treatment he rendered to the plaintiff on the occasions of his prior and subsequent accidents. The plaintiff claimed injuries to his back and neck, as well as a ruptured popliteal muscle in his right leg. Dr. Serena testified in his deposition that, as a direct result of the collision of August 19, 1991, which is the subject of this suit, that the plaintiff sustained sprains/strains to his neck and back. Dr. Serena further found that as a result of this accident, the plaintiff had sustained 10% to 15% permanent partial disability to both his neck and back. Dr. Serena confirmed that the plaintiff tore his popliteal muscle in the calf of his right leg, which could result in phlebitis, and he assigned a permanent partial disability of 20% to 25% to this CT Page 14420 leg. Dr. Serena agreed that he had treated the plaintiff for back and neck injuries on a number of occasions in the past, and also as a result of the 1992 accident, but testified that the plaintiff's disability ratings were based on the injuries received from the motor vehicle accident in question. The plaintiff also introduced into evidence medical bills received from Dr. Serena relating to this accident, and incurred prior to the June, 1992 accident, in the approximate amount of $5,200. The plaintiff, who has a life expectancy of 16.9 years, also testified convincingly that he lost several weeks from work for a total of $2,500, and that the accident hampered his life style, particularly in terms of certain kinds of fishing, and working in and around the house. His son confirmed this testimony regarding the impact of the accident on the plaintiff's life.
In determining fair, just and reasonable damages, the court has taken into account the lack of any contributory negligence, the medical testimony and reports of Dr. Serena, the amount of special damages, the permanency of the injuries and their impact on the plaintiff's life, and has concluded that an award of $45,000 in favor of the plaintiff and against the defendants is proper under the circumstances, subject to the provisions of the workers' compensation law regarding the right of the plaintiff's employer as a co-plaintiff to share in the award.
Regarding the claim of double or treble damages under General Statutes § 14- 295, it is noted in the first instance that the second count of the complaint does not follow the mandatory wording of the statute. Although reference is made to several of the so-called "trigger" statutes that permit enhanced damages, such as § 14-218a prohibiting driving at an unreasonable speed, § 14-219, speeding, and § 14-222 prohibiting reckless driving, there is no clear statement that "such violation was a substantial factor in causing such injury . . ." In any event, no violation of any such statute is found. The only evidence regarding the speed of the defendant's taxi was that it was proceeding at or about the posted speed limit. This accident was caused by the defendant going through a red light, General Statutes § 14-299(b)(3), which is not a trigger statute. Even if one were to find that the defendant operator had violated one of the trigger statutes, such as driving at a unreasonable speed because of the adverse weather conditions, the defendant did not act deliberately or with reckless disregard for the rights of others, a requirement for the imposition of enhanced damages.Bishop v. Kelly, 206 Conn. 608, 614, 539 A.2d 108 (1988); see CT Page 14421 also Jack v. Scanlon, 4 Conn. App. 451, 455, 495 A.2d 1084
(1985), cert. dismissed, 197 Conn. 808, 499 A.2d 59. The defendant was in a hurry to get his passenger to the railroad station and was clearly negligent in going through a red light, but not reckless as defined by such cases as Bishop and Jack,
which require a finding that the defendant "deliberately or with reckless disregard violated one of the statutes to which §14-295 refers." Bishop v. Kelly, supra, 206 Conn. 614.
The plaintiff Genaro Grimaldi is awarded $45,000 as compensatory damages, plus costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 26th day of December, 1995.
William B. Lewis, Judge